UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD S. OSTIPOW,
individually and as the personal representative
of the estate of Royetta Ostipow,

Plaintiff,

Case No. 21-11208

vs.

HON. MARK A. GOLDSMITH

WILLIAM FEDERSPIEL,

Defendant.
__________________________________/

**OPINION & ORDER**
**(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 27), (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 28), AND (3) DISMISSING PLAINTIFF'S STATE LAW CLAIMS WITHOUT PREJUDICE**

This case is brought by Plaintiff Gerald Ostipow—both individually and as the personal representative of the estate of his late wife, Royetta Ostipow—to recover the value of property seized by Defendant William Federspiel in his official capacity as the Saginaw County Sheriff.[1] This action resumes the dispute that the Court considered in Ostipow v. Federspiel, Case No. 16-CV-13062, 2018 WL 3428689 (E.D. Mich. July 16, 2018), aff'd, 824 F. App'x 336 (6th Cir. 2020).

After conferring with counsel, who advised that discovery was not necessary to resolve the viability of Ostipow's federal claims, the Court directed the parties to each file a motion for summary judgment on those claims, see 1/28/22 Order (Dkt. 26), which the parties did, see Federspiel Mot. (Dkt. 27); Ostipow Mot. (Dkt. 28). For the reasons that follow, the Court grants

[1] The Court refers to Plaintiff Gerald Ostipow as Ostipow, to his late wife as Royetta, and to the couple collectively as the Ostipows.

Federspiel's motion for summary judgment, denies Ostipow's motion for summary judgment, and dismisses Ostipow's state law claims without prejudice.[2]

## I. BACKGROUND

The pertinent facts, which are in all material respects undisputed, are set forth below.

### A. Seizure, Forfeiture, and Sale of Property

This long saga began in April 2008, when deputies from the Saginaw County Sheriff's Department executed search warrants on two properties owned by the Ostipows in Shiawassee County: 3551 and 3996 E. Allan Road in Owosso, Michigan. Ostipow, 2018 WL 3428689 at *1.[3] The deputies identified an indoor marijuana-growing operation at 3551 E. Allan Road, which was the residence of the Ostipows' son, Steven. Id. The Ostipows denied any knowledge of the operation. Id.

The deputies seized multiple items of personal property upon execution of the search warrants. Id. In June 2008, the Saginaw County Prosecutor initiated forfeiture proceedings for (i) the personal property at 3996 E. Allan Road and (ii) the real and personal property at 3551 E. Allan Road. Id. The Ostipows filed an answer to the proceedings, arguing that they were third-party innocent owners with no knowledge of their son's illegal activity. Id.

---

[2] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the parties' motions, the briefing includes separately paginated briefs in support of those motions, contained within the same filings as the motions; Federspiel's response to Ostipow's motion, which includes a separately paginated brief in support of that response (Dkt. 29); Ostipow's response to Federspiel's motion (Dkt. 30); Federspiel's reply in support of his motion (Dkt. 31); and Ostipow's reply in support of his motion (Dkt. 32).

[3] Gerald and Royetta Ostipow resided together at 3996 E. Allan Road. In re Forfeiture of Marijuana, No. 310106, 2013 WL 5731508, at *2 (Mich. Ct. App. Oct. 22, 2013). The 3551 E. Allen Road property was in Gerald Ostipow's name only. Id.

In January 2009, the Saginaw County Circuit Court granted summary disposition in favor of the county and ordered that all right, title, and interest in the seized real and personal property was to be forfeited to the Saginaw County Sheriff's Department and to be disposed of under Mich. Comp. L. § 333.7524. Id.[4] The Ostipows filed a claim of appeal with the Michigan Court of Appeals and moved in the circuit court for a stay conditioned on the posting of a bond. Id. The circuit court authorized a stay conditioned on posting a bond in the amount of $150,000, which the Ostipows did not post; instead, they asked the Michigan Court of Appeals to review the bond conditions. Id. The Michigan Court of Appeals denied the Ostipow's motion to amend the bond conditions. Id.

In May 2009, the Sheriff's deputies secured the structures at 3551 E. Allan Road and proceeded to remove the Ostipows' personal property. Id. at *2. Over the course of 2009, the Saginaw County Purchasing Manager and Risk Manager, Kelly Suppes, sold the real property at 3551 E. Allan Road for $86,000 through an independent realtor and sold the personal property on eBay for undisclosed amounts. See Def. Summary of Material Facts (SMF) ¶ 17 (Case No. 16-CV-13062, Dkt. 97) (citing Suppes Aff. (Case No. 16-CV-13062, Dkt. 97-14)).

**B. Further State Court Proceedings and Judgment in Favor of Ostipows**

In January 2011, the Michigan Court of Appeals reversed and remanded to the circuit court, finding that summary disposition in regard to the forfeiture was improper because there were

[4] The Michigan Legislature has amended this statute (effective April 2017), but Ostipow has provided the original statute applicable at the time of the seizure (Dkt. 20-8). Mich. Comp. L. § 333.7524(b) allowed the government agency that had seized forfeited property to sell that property, the proceeds of which sale were to be distributed by the court having jurisdiction over the forfeiture proceedings to the treasurer of the unit of government having budgetary authority over the seizing agency.

material questions of facts regarding the Ostipows' innocent owner defense. See In re Forfeiture of a Quantity of Marijuana, 805 N.W.2d 217, 225 (Mich. Ct. App. 2011).

After remand, the case went to trial in March 2012. The circuit court found that the Ostipows were not innocent owners and that they had waived their rights and remedies regarding the non-forfeited property due to their failure to post bond. 3/20/12 Saginaw County Trial Tr. at 178–182 (Case No. 16-CV-13062, Dkt. 97-16); Ostipow, 2018 WL 3428689, at *2. In October 2013, the Court of Appeals reversed in part, finding that Royetta was an innocent owner and that the trial court had erred in forfeiting her rights to the property at issue. Id. at *4.

Following this second remand, the circuit court entered a judgment in August 2016 finding that certain interests of the Ostipows and the separate dower interest of Royetta as to certain property were not forfeited.[5]

---

[5] Specifically, the circuit court found that the following interests were not forfeited: (i) Royetta's interest in the real property at 3551 E. Allan Road, for which Royetta was to be compensated for her dower interest; (ii) the Ostipows' interests in "[a]ll personal property" in the curtilage and outbuildings at 3551 E. Allan Road (excepting Steven Ostipow's Ski-Doo snowmobile and property inside a shed where drug manufacturing equipment was found), including but not limited to a 1965 Chevrolet Nova and its trailer, a collection of tools and equipment, and other personal effects; (iii) the Ostipows' interests in certain specified firearms located at 3996 E. Allan Road, which had already been returned to the Ostipows at the time of the judgment; and (iv) the Ostipows' interests in ammunition, firearms cases, scopes, and four specifically identified firearms taken from Steven's bedroom at 3996 E. Allan Road. See 8/2/16 Saginaw County Judgment (Case No. 16-13062, Dkt. 97-19).

Ostipow also calls attention to a Saginaw County Circuit Court opinion issued after remand but before the court's August 2016 judgment, which Ostipow believes establishes that Federspiel is the party with the obligation to compensate Ostipow for the non-forfeited property. Ostipow Resp. at 1–2. This order states in part:

> As to who is responsible for the monetary value and payment to Mrs. Ostipow for her interest, that responsibility in the view of the court lies with petitioner [Federspiel]. . . . [C]laimant is entitled to compensation from somebody or some entity and as it was petitioner who initiated the forfeiture proceedings, caused the sale before final determination of her legal status, and are the only party in this case

**C. First Action in Federal Court**

In August 2016, the Ostipows made a written demand on Federspiel for the return of the real and personal property in which they retained a property interest. Ostipow, 2018 WL 3428689, at *2. After Federspiel failed to comply with this demand, the Ostipows took no action in the state courts. Rather, they filed suit in this Court, asserting multiple federal and state claims, including alleged violations of the Takings Clause of the Fifth Amendment and the Ostipows' substantive due process rights. Id.; 8/24/16 Compl. (Case No. 16-CV-13062, Dkt. 1). In July 2018, this Court granted Federspiel's motion for summary judgment with respect to the federal claims and dismissed without prejudice the state law claims. Ostipow, 2018 WL 3428689, at *11.[6]

In August 2020, the United States Court of Appeals for the Sixth Circuit affirmed this Court's decision. See Ostipow, 824 F. App'x at 338.

**D. Present Action**

In March 2021, Ostipow wrote another letter to Federspiel, demanding payments in specific amounts for Royetta's dower interest in 3551 E. Allan Road (equal to one third of the property's fair market value), the 1965 Chevrolet Nola, and the alleged replacement value of the personal property. Compl. ¶ 31 (Dkt. 1-1).

Not receiving an answer, Ostipow brought suit in Shiawassee County Circuit Court, asserting claims based on (i) the Takings Clause of the Fifth Amendment, (ii) a substantive due

---

> to which the court can now look, that financial responsibility would appear to be theirs and not, as claimed, the estate of Mr. Ostipow.

11/5/15 Saginaw County Circuit Court Order at PageID.1310 (Dkt. 30-4).

[6] Subsequent to this decision, the Ostipows filed a notice of death regarding Royetta's passing (Case No. 16-CV-13062, Dkt. 135).

process violation under the Fourteenth Amendment, (iii) Michigan inverse condemnation, and (iv) Michigan restitution. Id. ¶¶ 32–55. Defendants removed the action to this Court (Dkt. 1).

## II. ANALYSIS[7]

The Court begins by considering whether the doctrines of res judicata and collateral estoppel bar Ostipow's claims. The Court then reviews Ostipow's takings claim and substantive due process claim and, with an award of summary judgment to Federspiel on these federal claims, declines to exercise supplemental jurisdiction over Ostipow's remaining state law claims.

### A. Res Judicata and Collateral Estoppel

As an initial matter, Federspiel notes that the Sixth Circuit has already ruled on takings and substantive due process claims brought against him by Ostipow. Federspiel argues that this Court should bar Ostipow's present federal claims based on the doctrines of res judicata and collateral estoppel. Federspiel Br. in Supp. Mot. at 9–17.

Res judicata bars a new claim that follows an already-adjudicated claim when, among other factors, (i) an issue in the present action was or should have been litigated in the prior action; and (ii) there is an "identity of the causes of action," which requires that the claims arose out of "the same transaction or series of transactions" or "the same core of operative facts." Trustees of Operating Engineers Loc. 324 Pension Fund v. Bourdow Contracting, Inc., 919 F.3d 368, 380–383 (6th Cir. 2019) (punctuation modified, citations omitted). For the overlapping doctrine of collateral estoppel to bar a new claim, "the precise issue must have been raised and actually

---

[7] In assessing whether the parties are entitled to summary judgment, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). Each movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

litigated in the prior proceedings." Cobbins v. Tenn. Dep't of Transp., 566 F.3d 582, 589 (6th Cir. 2009).

These doctrines do not apply. As explained below, the legal analysis employed by this Court and by the Sixth Circuit in the former action counsels in favor of awarding summary judgment to Federspiel on the federal claims in the current action. But the rulings do not compel this conclusion under the former adjudication doctrines invoked by Federspiel. Ostipow has specifically pleaded that each of his new federal claims derives from Federspiel's actions and inactions "[o]n a date following the issuance of the Sixth Circuit's decision." Compl. ¶¶ 40, 45. The claims presented by Ostipow's latest takings and substantive due process claims are, therefore, technically distinct from those already adjudicated by this Court and the Sixth Circuit, and so the Court considers these claims on their own merits.

**B. Takings**

To prevail on his takings claim, Ostipow must show that Federspiel "(1) took [his] property and (2) failed to compensate [him] justly or failed to put the property to public use." Prater v. City of Burnside, Ky., 289 F.3d 417, 425 (6th Cir. 2002) (punctuation modified, citation omitted). "[A] property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." Knick v. Twp. of Scott, Penn., 139 S. Ct. 2162, 2170 (2019).

According to Ostipow, "[i]n this case, a taking has clearly occurred." Ostipow Mot. at 12. Ostipow argues that he has a property interest in the non-forfeited property, as the Sixth Circuit has recognized. Ostipow Resp. at 14 (citing Ostipow, 824 F. App'x at 342). Ostipow submits that the sale of that property has been "used as funding for the Sheriff's law enforcement operations." Ostipow Mot. at 12. In Ostipow's view, Federspiel falsely represented to the Sixth Circuit that he

would provide the Ostipows with compensation, since which time Federspiel has "simply refused to pay just compensation" and communicated that he "is never going to pay just compensation." Ostipow Resp. at 14.

Federspiel counters that the Sixth Circuit has already found that the Sheriff Department's seizure and forfeiture of the Ostipows' property cannot give rise to a takings claim. Federspiel Br. in Supp. Mot. at 19–20. As the Sixth Circuit explained:

> Indeed, it is well settled that a state's seizing and retaining property as part of a criminal investigation is not a "taking" for a "public purpose" under the Fifth Amendment, and thus does not give rise to a claim for just compensation. . . .
>
> So too here. The Ostipows' property was seized pursuant to uncontested warrants authorizing the search and seizure of property believed to be involved in drug manufacturing. The Saginaw County prosecutor, in turn, initiated forfeiture proceedings against that property. The weight of authority holds that claims emanating from the use of police power are excluded from review under the Takings Clause. To the extent there conceivably is merit to the Ostipows' suggestion that civil asset forfeiture actions specifically should be reviewed under the Takings Clause, no such rule is clearly established, meaning Federspiel is entitled to qualified immunity on that claim.

Ostipow, 824 F. App'x at 341–342 (citations omitted, emphasis added).

Ostipow's claim—that he is owed just compensation for property seized and sold pursuant to forfeiture proceedings—still emanates from the Sheriff Department's "use of police power," and so his claim remains "excluded from review under the Takings Clause." Id. at 342. Ostipow does not argue that the law has changed—and courts within this circuit believe it has not, as they continue to cite Ostipow, 824 F. App'x at 342 for the principle that "takings attendant to the police power are not compensable." Williams v. City of Stanford, Ky., 533 F. Supp. 3d 512, 525 (E.D. Ky. 2021); see also Halabo v. Michael, No. 21-12528, 2022 WL 982353, at *4 (E.D. Mich. Mar. 30, 2022). Ostipow does not address the non-applicability of the Takings Clause to police power-based claims at all. His silence, however, cannot nullify the binding precedent against him.

Ostipow apparently believes that the takings calculus has changed because the Sixth Circuit has recognized his property interest, relieving him of the need to establish a "taking" and allowing him to rush on to the question of just compensation. See Ostipow Resp. at 14. Ostipow relies on the following discussion—which follows the holding quoted above—for his understanding that the Sixth Circuit has recognized his property right:

> That the Ostipows received a judgment in their favor does not change our conclusion. . . . Over a century ago, the Supreme Court held that the property right created by a judgment against a government entity is not a right to payment at a particular time; it is instead a recognition of a continuing debt of that government entity. . . . And so while the Ostipows have a property right in their judgment, there is no evidence that property right ultimately will not be honored.

Ostipow, 824 F. App'x at 342–343 (citations omitted, emphasis added).

Ostipow is correct that the Sixth Circuit acknowledged that he has a property right, but nothing in the Sixth Circuit's explanation suggests that the existence of that property right dispenses with the requirement that Ostipow make out all of the elements of a takings claim. To the contrary, the Sixth Circuit established that Ostipow's property right "is not a right to payment at a particular time," and so a delay in receipt of compensation does not, alone, violate the Takings Clause. Id. at 343. Ostipow doubts that Federspiel will satisfy the debt owed, but he has no legal basis for asserting that Federspiel's delay in compensating him for property seized and sold pursuant to police power gives rise to a takings claim. This theory still does not fit. The Court awards summary judgment to Federspiel on Ostipow's takings claim.

**C. Substantive Due Process**

A plaintiff asserting a substantive due process claim must (i) demonstrate "'a deprivation of a constitutionally protected liberty or property interest'" and (ii) "show how the government's discretionary conduct that deprived that interest was constitutionally repugnant." Guertin v. State, 912 F.3d 907, 922 (6th Cir. 2019) (quoting Am. Exp. Travel Related Servs. Co. v. Ky., 641 F.3d

685, 688 (6th Cir. 2011)); see also Siefert v. Hamilton Cnty., 951 F.3d 753, 765 (6th Cir. 2020) (clarifying that the substantive due process analysis is a two-step inquiry). The second step asks whether the governmental entity engaged in "'conscience-shocking conduct.'" Id. (quoting Am. Exp. Travel, 641 F.3d at 688).[8]

Ostipow argues that Federspiel's purposeful refusal to remit payment constitutes a violation of his protected property interest because it reflects "'willful and unreasoning action,'" Ostipow Mot. at 15–16 (quoting Pearson v. City of Grand Blanc, 961 F.2d 1211, 1221 (6th Cir. 1992) (punctuation modified)); it "'shocks the conscience,'" id. (quoting Johnson v. City of Saginaw, 980 F.3d 497, 513 (6th Cir. 2020) (punctuation modified)); and it constitutes "'conduct that is so brutal and offensive that it does not comport with traditional ideas of fair play and decency,'" id. (quoting Handy-Clay v. City of Memphis, 695 F.3d 531, 547–548 (6th Cir. 2012) (punctuation modified, citations omitted)).

Ostipow asserts that, when affirming rejection of the prior substantive due process claim, the Sixth Circuit relied on Federspiel's acknowledgement that he owes compensation to Ostipow. Id. at 15. The situation has changed, in Ostipow's view, now that Federspiel's continued inaction has established that he will not honor the Ostipows' property right. Id. at 16.[9] Ostipow notes that—as this Court has memorialized—Federspiel has represented that he has not pursued a means of compensating Ostipow for the non-forfeited property following the Sixth Circuit opinion. See 1/28/22 Order at 3 (Dkt. 26) ("The defense concedes that no steps were taken by Federspiel or

[8] Because the second prong is dispositive of Ostipow's claim, the Court need not address the issue of whether Ostipow has a protectible property interest.

[9] See also Ostipow Resp. at 17–18 ("The passage of time and the total inaction by Defendant is the 'willful and unreasoning action'"); Ostipow Reply at 6 (arguing that Federspiel having "[told] a federal appeals court what [he] . . . is going to do" and then "not do[ing] it to deny a citizen what is theirs" constitutes a substantive due process violation).

other Saginaw County officials towards payment . . . ."). Ostipow concludes that this broken "promise" and obstinate refusal to provide compensation violates his substantive due process rights. Ostipow Mot. at 16.

Federspiel observes that the Sixth Circuit has already determined that the Ostipows failed to establish a substantive due process violation. Federspiel Br. in Supp. Mot. at 22–23. The Sixth Circuit stated in the prior action:

> After eight years of state litigation, the Ostipows have every right to be aggravated over the delay in Saginaw County satisfying their judgment. As frustrating as those actions may be, however, Federspiel's conduct does not "shock[ ] the conscience." See Gohl [v. Livonia Pub. Sch. Sch. Dist.], 836 F.3d[, 672] at 678 [(6th Cir. 2016)]. A valid court order, issued after the Ostipows had an opportunity to be heard, instructed that the Ostipows' property was forfeited "to the Saginaw County Sheriff's Department" to "be disposed of by said Department as provided by statute, MCL 333.7524." It was not until seven years later—after a second trial court proceeding following a second remand from the Michigan Court of Appeals, and long after the property was sold—that the order was partially modified. Absent a stay of execution of the initial order, Federspiel seemingly was free to act upon the order's command.

Ostipow, 824 F. App'x at 345 (emphasis added).

Ostipow's present claims are in a different posture, but the same conclusion holds. As the Sixth Circuit has established, mere "delay" in the satisfaction of Ostipow's judgment—even the increasingly lengthy delay extended by the present litigation—is not sufficient to establish a substantive due process violation. See id. A government entity's monetary obligation does not equate to a right to receive payment at a particular time. Id. at 343.

Ostipow accuses Federspiel of refusing to provide the compensation due and of misrepresenting to the Sixth Circuit what actions he was taking to satisfy the debt. Even if the Court takes Ostipow's accusations at face value and accepts Ostipow's claim as pleaded that Federspiel has "confirm[ed], by inaction, [that the] Ostipows are not entitled to any compensation for the value of their property," Compl. ¶ 45, Ostipow has not made out a substantive due process

claim. Ostipow's claim rests on Federspiel having not taken a certain action, despite his alleged obligation and promise to do so. But Ostipow cites no authority suggesting that such a circumstance "shocks the conscience."

Ostipow refers to a total of three cases in support of his substantive due process argument, two of which found that no substantive due process violation had occurred. All of these cases are distinguishable, as all arose in very different contexts. Pearson found that there was no substantive due process violation where a city council denied a landowner's application to rezone his property for use as a fast-food restaurant because—under an analysis specific to zoning challenges—the council's "action" was "rationally related to zoning." 961 F.2d at 1224. Handy-Clay found that there was no substantive due process claim where the former employee of a city attorney's office alleged that she had been terminated due to "repeated complaints about malfeasance and corruption" because her asserted rights were protected by the First Amendment rather than due process. 695 F.3d 531 at 548. Of the cases cited, only Johnson found that a plaintiff had adequately alleged a violation of her substantive due process rights, concluding that the city's five-month suspension of her restaurant's water service had no "rational" connection to the city's supposed goal of deterring dangerous behavior (though these rights were not clearly established, so the city was entitled to qualified immunity). 980 F.3d at 515.

Ostipow does not attempt to explain how this diverse case law on various types of governmental action supports his novel theory that Federspiel's inaction in failing to pay a judgment containing no definitive monetary amount violates Ostipow's substantive due process rights. Even in a rare case, where a government entity's failure to make a payment due on a judgment was held to give rise to a substantive due process claim, the circumstances were not remotely similar to those in the instant case. Future Dev. of Puerto Rico v. Estado Libre Asociado

De Puerto Rico, 276 F. Supp. 2d 228, 239 (D.P.R. 2003) (finding that plaintiff had adequately pleaded a substantive due process claim where defendants' "many acts deliberately performed" and "unequal treatment" toward their creditors evidenced "an intent to injure"). Ostipow does not allege that Federspiel engaged in deliberate action to cheat him, but only that Federspiel refused to take the action that Ostipow thinks he should have taken. The weight of authority counsels against shoving the square peg presented by these facts into the round hole of substantive due process.

Federspiel's position is not a willful refusal to comply with an unambiguous legal obligation. He contends that there are several litigable issues remaining, including: (i) whether Federspiel must compensate Ostipow for the sale proceeds or the fair market value of the non-forfeited property, see Ostipow, 824 F. App'x at 344; (ii) whether Ostipow may collect on Royetta's dower interest following her passing, see id.; and (iii) which state court has jurisdiction over enforcement of the judgment, see Ostipow Mot. at 7–8; Federspiel Resp. at 8 (citing Mich. Compl. L. § 333.7523(3)). And regardless of the substantive resolution of these issues, the Sixth Circuit has instructed that, "at day's end, it is the state court's duty to oversee and ensure the satisfaction of the Ostipows' judgment." Ostipow, 824 F. App'x at 344. Federspiel maintains that Ostipow's proper course of action—consistent with the Sixth Circuit's expectation—is to "return to the state court to obtain guidance and interpretation of the judgment from the court that issued it." Federspiel Reply at 2. Federspiel's refusal to submit to Ostipow's unilateral monetary demands in these circumstances falls far short of a violation of substantive due process, which protects against "only the most egregious official conduct" by government officers. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

At this posture and point in time, principles of substantive due process have not been violated. The Court grants summary judgment to Federspiel on this claim.

**D. State Law Claims**

Ostipow has two remaining state law claims. See Compl. ¶¶ 48–55. But with summary judgment having now been awarded against Ostipow on his federal claims, there is no longer any federal character to the case. The absence of federal claims and the Sixth Circuit's instruction that it is the "state court's duty" to oversee Ostipow's judgment, Ostipow, 824 F. App'x at 344, make it appropriate for this Court to decline to exercise supplemental jurisdiction over Ostipow's state law claims. They will be dismissed without prejudice. See 28 U.S.C. § 1367(c).

**III. CONCLUSION**

For the foregoing reasons, the Court grants Federspiel's motion for summary judgment (Dkt. 27) and denies Ostipow's motion for summary judgment (Dkt. 28). Ostipow's state law claims are dismissed without prejudice.

SO ORDERED.

Dated: May 2, 2022
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge